DOLORES M. NEEDLER, Plaintiff-Appellee, *v.* WILLIAM L. NEEDLER, Defendant-Appellant.

(Nos. 53315, 53378 cons.; ▮▮▮▮▮▮▮▮▮

First District—February 26, 1971.

12

Arvey, Hodes & Mantynband, of Chicago, for appellant.

Rinella & Rinella, of Chicago, (Bernard B. Rinella, of counsel,) for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant, William Needler, appeals from a judgment of the Circuit Court of Cook County ordering him to pay to the plaintiff, Dolores Need-

ler, a sum of $10,552.00 in arrearages for lump sum alimony payments, unusual hospitalization expenses and child support allegedly owed pursuant to a divorce decree, $1,500.00 in attorney fees in defense of this appeal and denying his petition for a modification of the child support payments.

The parties were married in April of 1952 and as a result of that marriage four children were born, John, 15, Dianne, who died in 1961 at the age of 7, and twin boys, David and Lowell who died at the ages of 8 and 7 respectively. In 1963, prior to their divorce, the parties knew that David and Lowell were afflicted with an ailment described as genetic degenerative brain disease as a result of which the children required constant medical care and attention and would require that attention for the remainder of their lives. Plaintiff was granted a divorce on July 24, 1963, and was awarded custody of the older son, John, and of the twins, subject to reasonable visitation privileges. Pursuant to a property settlement agreement entered into between the parties and incorporated into the decree, defendant was required, in addition to several other provisions, to pay a lump sum of $7,000.00 in $1,250.00 semi-annual installments, $200.00 per month periodic alimony, $300.00 per month for the support of John, and $500.00 per month for the support of the twins, David and Lowell. The agreement provided that since the physical conditions of the twins were such that the amount of money necessary for their joint support would not be materially lessened in the event one of them died before the other, the amount of money necessary for their support should continue in the same amount during the lifetime of the survivor. The agreement further provided that "the husband further agrees to pay any and all unusual expenses for medical care, drugs or hospitalization for the minor children of the parties, it being agreed at this time that any unusual medical or hospital expenses shall be a sum in excess of $200.00 during any calendar month."

In October, 1963, approximately four months after entry of the decree, plaintiff placed the twins in the Illinois State Pediatric Institute at Chicago. The institute made a charge of $132.00 per child per month which provided full and complete care and maintenance for the children. When the children went to the institute, the plaintiff's expenses for food, drugs and doctor bills for them ceased. At that time she removed the twins' hospital beds from her home and six months later discharged a Mrs. Kukn whom she had paid to help care for the twins. The diagnosis and prognosis for the twins was the same when they entered the hospital as when the property settlement agreement was made. They were not being treated for any new or different illness, nor were they expected to recover and return home. David died in November, 1966 after being in the in-

stitute 36 months, and Lowell died in September, 1967 after being at the institute 45 months.

On February 27, 1967, defendant filed a petition to modify the provision for the child support alleging that since the child David was then deceased and the institute charged $132.00 per month for the care and maintenance of the surviving child, Lowell, the support provision should be modified accordingly, or the defendant be ordered to pay directly to the institute all charges for the maintenance of the surviving child.

Plaintiff filed an answer alleging that the cost of the children's care at the institute has no reasonable relationship as a limiting factor to the total cost of their care, support and maintenance, and further answered that the parties had agreed that the cost of support would not be decreased in the event of the death of one child, and that defendant had agreed to pay all unusual expenses for medical care, drugs or hospitalization whenever such medical or hospitalization expenses exceeded $200.00.

Plaintiff also filed a cross petition alleging that defendant owed an arrearage of $5,250.00 due on the $7,000.00 lump sum alimony provision; that there had been a material change in circumstances warranting an increase in the periodic payments of alimony and child support for all children; that defendant is now capable of paying a larger sum and that she be paid reasonable attorney fees in defense of defendant's petition and preparation of her cross petition.

Defendant's reply to plaintiff's answer and cross petition denied that there was an arrearage in an amount of $5,250.00 or in any amount; denied that there was a material change in circumstances warranting an increase in the alimony and child support provisions, and further alleged that the property settlement agreement contemplated that the twins would reside with their mother at home which is the reason that the cost of maintenance for the children was accumulated in a single sum, and that by placing the children in the Illinois Institute of Pediatrics plaintiff has no expense whatsoever for the care and maintenance of the surviving child other than the $132.00 per month payment.

Pursuant to a motion of defendant to strike plaintiff's answer and cross petition for failure to comply with discovery rules, the trial judge ordered that defendant continue to pay $200.00 per month alimony and $300.00 per month for support of John as set forth in the decree, but in lieu of the $500.00 per month previously required to be paid for the support of the twins, that defendant pay the sum of $132.00 per month to the Illinois Institute of Pediatrics for the care and maintenance of Lowell, and the balance of the $500.00 in escrow in the First National Bank of Chicago, subject to further order of the court.

It is undisputed that defendant initially paid $1,750.00 on the $7,000.00

lump sum alimony amount; that he has made all payments of $200.00 periodic alimony and $300.00 per month for the support of the son, John, pursuant to the decree; that he has made all but three of the $500.00 per month payments for the support of the twins pursuant to the decree and in addition that defendant has made periodic payments of $264.00 to the Illinois Institute of Pediatrics, totaling $5,350.80, to February 27, 1967. After that date, pursuant to the trial judge's order, defendant has made three payments of $132.00 and one payment of $26.40 to the institute.

At the hearings on the petitions, defendant testified that the payments of $5,350.80 and $1,750.00, totaling $7,100.80, were made in satisfaction of his $7,000.00 lump sum alimony obligation. He testified that during May or the spring of 1964 he had several conversations with plaintiff, initially by phone and subsequently at their home in Wilmette. Plaintiff told him that she had received bills from the Illinois Institute of Pediatrics for the care of the children and stated that she would accept the payments which he would make to the institute and would apply them to the $7,000.00 settlement under the decree. He told her that he was not financially able to make the payments every month but would do the best that he could so that they could get the $7,000.00 item paid up in full. She asked whether he would make the payments and if he would allow the payments to be applied to the $7,000.00 and he said that he would because, as she knew, he was unable to make the $1,250.00 semi-annual payments. Through subsequent conversations with plaintiff, he was familiar with the children's deteriorating condition and stated that they did not contemplate that the children were ever to return home. There were subsequent telephone conversations during which the plaintiff indicated how much was remaining of the $7,000.00 amount. At no time after that until the time of this petition did the plaintiff or anyone else make a claim against him with respect to the $7,000.00 obligation.

In the trial court plaintiff contended that defendant was obligated under paragraph 11 of the decree to make the $264.00 payments to the Illinois Institute of Pediatrics and he therefore could not be entitled to a set-off in the amounts paid against the $7,000.00 obligation, and that there was no subsequent oral agreement to modify defendant's obligations under the decree, and even if there were, such an agreement had not been approved by the court and could not be enforceable, relying on *Walter v. Walter*, 189 Ill.App. 345.

The trial court determined that paragraph 11 of the property settlement agreement incorporated into the decree was controlling; that in paragraph 11 defendant agreed "to pay any and all unusual expenses for medical care, drugs or hospitalization for the minor children of the parties, it being agreed at this time that any unusual medical or hospital

expense shall be a sum in excess or $200.00 during any calendar month.";
that the payments of $264.00 per month to the Illinois Institute of Pediatrics for the care of the twins was a hospital expense in excess of $200.00
per month and therefore an unusual expense for hospitalization to be
paid by defendant; that as a matter of law there could be no subsequent
enforceable oral agreement to modify the provisions of the divorce decree and therefore held that defendant owed plaintiff $5,250.00 remaining on the $7,000.00 alimony obligation and was not entitled to a set-off
for the payments totaling $5,350.80 which he made to the institute; that
pursuant to paragraph 11 defendant owes plaintiff $4,224.00 for sixteen
monthly payments of $264.00 which she had made to the institute; that
defendant is entitled to a credit of $422.00 for the three payments of
$132.00 and one of $26.00 to the Illinois Institute of Pediatrics for the
care of Lowell, subsequent to the death of David, since that amount is
not in excess of $200.00 monthly; that defendant is also obligated to make
the three child support payments of $500.00 which he had failed to make
between the death of David and the death of Lowell, since he had agreed
that the amount of support during the lifetime of the survivor of the two
children would be constant, and thus he was in default in such monthly
payments in an amount of $1500.00; and that, in total, defendant is indebted to plaintiff in amounts of $5,250.00, $4,224.00 and $1500.00, less a
credit of $422.00, or $10,552.00. The court denied plaintiff's request for
reasonable attorney's fees of $3,000.00 for representation in the trial court,
reserved consideration of plaintiff's petition for increase in alimony and
child support payments and made an express finding that there is no just
reason for delaying enforcement or appeal. Subsequently, the trial court
awarded plaintiff $1500.00 for attorney's fees to defend this appeal.

The critical issue for determination is whether the payments of $264.00
per month to the Illinois Institute of Pediatrics for the full care of the
twins were "unusual expenses for medical care, drugs or hospitalization
for the minor children" within the meaning of paragraph 11 of the property settlement agreement. The trial court relied upon the second clause
of paragraph 11 that "it being agreed at this time that any unusual medical or hospital expense shall be a sum in excess of $200.00 during any
calendar month" and held that since these payments were in excess of
$200.00 per month, they were unusual expenses for hospitalization for
which the defendant was liable.

We cannot place such a strict literal construction on paragraph
11 and we believe the trial court erred in ruling that defendant is liable
for all payments of $264.00 to the institute for the care of the twins in
addition to the $500.00 monthly payments for their care and support
and therefore, defendant is entitled to a set-off for the payments which

18

he made to the hospital against his $7,000.00 alimony obligation. Ill. Rev. Stat. 1967, ch. 40, par. 19, provides that when a divorce is decreed a court may make such order touching "the care custody and support of the children * * * as, from the circumstances of the parties and the nature of their case, shall be fit, reasonable and just." The measure of the sum to be paid is the need of the children and the ability of the husband to pay. (*Gregory v. Gregory*, 52 Ill.App.2d 262.) Such payments for care and support of a child are awarded separately and are to be distinguished from payments of alimony which are awarded for the care and maintenance of one of the spouses.

In July of 1963 when the original decree was entered, plaintiff was living in their Wilmette home which she later sold for $56,000.00 and paid off their $30,000.00 mortgage. A Mrs. Kukn, along with two children was living in the home to help care for the twins. Plaintiff was paying her $90.00 per month at the time and providing room and board for her family. Her monthly bills consisted of the house payment of $333.00, utilities $55.00, car payment $80.00, groceries $225.00, and clothing $100.00. After the children were placed in the institute she no longer paid Mrs. Kukn to help her and after the Kukn family moved out she no longer provided their room and board. Plaintiff sold the Wilmette home, purchased a new house and netted $5,200.00 on the exchange. Her new house payment is $211.00 and her food bill is approximately $180.00 and miscellaneous expenses $400.00 per month. When the twins were placed in the hospital their food, drug and doctor bills ceased and the only charge made by the hospital was $132.00 per child per month.

■■ In view of the purpose for which child support is awarded, and the rule that words of a contract are to be given their plain and ordinary meaning, we believe that the proper interpretation of paragraph 11 is that "unusual expenses for medical care, drugs or hospitalization for the minor children" which defendant agreed to pay contemplates payment for expenses incurred *in addition to* those ordinarily assumed by plaintiff in this case and paid for out of the standard $500.00 per month allowance and does not contemplate payments for expenses incurred *in lieu of* the ordinary care and maintenance intended to be provided by the $500.00 per month payments. Any other interpretation results in an unjust enrichment of plaintiff without a corresponding benefit to the children who are the intended beneficiaries. The evidence clearly shows that the payments of $264.00 to the Illinois Institute of Pediatrics was for permanent care and maintenance previously provided by the plaintiff as ordinary care and maintenance and support when they were living in her home. Expenses for food, clothing, shelter, doctors' services, drugs and outside help were all but eliminated. In addition, it is clear

that these expenses were not unusual within the ordinary meaning of that term, especially when viewed in the context of circumstances and expectations of the parties at the time this phrase was adopted. Plaintiff states in her brief that "the removal of the twins from the home was not a change of circumstances so as to modify the custody payment *because the parties anticipated such a removal of the twins at the time of the making of the agreement* and provided in paragraph 8 of the agreement that the husband was to pay the same amount of money ($500.00 per month) until both twins had died." The change of the children to the institute was a permanent one since the twins were not expected to recover. Plaintiff sold her larger home, removed the hospital beds and discharged her hired help.

■■ Therefore, we believe that the payments made by the parties to the institute for the care and maintenance of the children were not unusual hospitalization expenses contemplated by paragraph 11, so that defendant should be permitted a set-off against his remaining obligation of $5,200.00 on the $7,000.00 lump sum alimony obligation in the amount of those payments which he made to the institute, that is, $5,350.80 paid to the death of David, and further that defendant is not required to reimburse plaintiff in the amount of $4,224.00 which she paid to the institute for the care of the twins.

Plaintiff argues that assuming the payments made by defendant for the hospitalization of the twins were not contemplated by the terms of paragraph 11 of the agreement, defendant is not entitled to a set-off for the payments made for the reason that an oral agreement to modify the terms of the agreement incorporated into the decree is unenforceable, relying on *Walter v. Walter,* 189 Ill.App. 345, where the court denied an enforcement of an oral agreement to modify the alimony provisions of a divorce decree. It should be noted that the defendant in Walter had not complied with his subsequent oral agreement and the court stated that approval of the agreement in question was subject to the discretion of the court, presumably to depend upon the fairness of the agreement.

In *Wolfe v. Wolfe,* 303 Ill.App. 188, the trial court refused to hold defendant in contempt for non-payment of support pursuant to an original decree where plaintiff had orally agreed that support payments for their minor child would be reduced from $15.00 to $12.50 per week and the defendant paid $12.50 per week in accordance with this agreement for five years. The court noted that defendant had complied with the subsequent oral agreement, and relied upon *Cavenaugh v. Cavenaugh,* 106 Ill.App. 209. There, without applying to the court, the parties agreed to a reduction in monthly alimony payments, and upon a proceeding for enforcement by the wife, the court said the agreement for

the reduced amount was not an independent contract, but merely a consent in the reduction in the amount of alimony and that the wife had a right to accept the lesser amount in satisfaction of the amount awarded by the decree and held that the court had full power to enforce the agreement between the parties.

■■ In the present case defendant testified that plaintiff orally agreed to accept the periodic payments of $264.00 to the institute not under paragraph 11 of the agreement, but in satisfaction of the $7,000.00 lump sum alimony obligation rather than in the $1250.00 semi-annual payments. In her testimony the plaintiff neither admitted nor denied the existence of the oral agreement. The trial court did not hold that defendant had failed to prove that the oral agreement was made but that such an agreement would not be enforceable and could not modify the terms of the decree. We believe that the testimony of defendant and the conduct of the plaintiff as disclosed in the evidence of receiving the periodic payments of $264.00 for four years, amounting to $5,380.50, without ever making a demand for the $1250.00 payments sufficiently establishes the existence of the subsequent oral agreement which could have been enforced by the trial court.

■■ But assuming that the oral agreement is not sufficiently established, we believe there is an additional ground on which plaintiff's claim should be denied. In *Anderson v. Anderson*, 48 Ill.App.2d 140, where the defendant stopped making support payments in reliance upon plaintiff's promise that her new husband would adopt their child and the plaintiff subsequently attempted to enforce the support decree, the court stated at 147:

"It is true that a court cannot reduce the amount owing on past due installments of child support * * *. This is not to say, however, that in a proper case the court cannot give effect to an agreement by a proper case the court cannot give effect to an agreement by a party to waive the payments or accept a lesser amount. (Citing *Cavenaugh v. Cavenaugh, supra; Wolfe v. Wolfe, supra.*) Moreover, even in the absence of an enforceable agreement, we know of no reason why the doctrine of equitable estoppel could not be applied as to all or part of the past installments in an appropriate case."

It is undisputed that including the initial payment of $1750.00, plaintiff received over $7,000.00 from defendant through these payments of $264.00. We have already determined that these payments were not or should not have been made pursuant to paragraph 11 of the decree. Defendant testified that plaintiff received these payments to be applied on the $7,000.00 lump sum alimony obligation under the decree and it is clear from the record that plaintiff made no demand for the $1250.00

payments throughout this four-year period. In view of these circumstances, assuming without deciding that the evidence fails to establish an oral agreement between the parties to accept payment of the $7,000.00 obligation in a different form, we believe that plaintiff is now estopped to claim that she is entitled to the balance of the $7,000.00 obligation ($5,250.00) where she has received this amount in a manner different from that provided in the decree, presumably at her request or at worst without her objection.

We also believe that the trial court erred in denying defendant's petition to decrease the payments for the support of the surviving child, Lowell, which was filed on February 27, 1967, subsequent to the death of David. The issue on a petition for modification is whether there are changed circumstances which relate to the needs of the child and the financial circumstances of the parties. The findings and order of the trial court will not be reversed unless contrary to the manifest weight of the evidence. (*Lewis v. Lewis,* 120 Ill.App.2d 263.) The present case is peculiar in that the amount necessary for the care and support of the child can be ascertained with more certainty than in other cases. After the death of David the only expenses for the care and support of Lowell were payments of $132.00 per month to the Illinois Institute of Pediatrics until his death in September, 1967. These circumstances were clearly changed from the time when the original decree was entered and both children were alive and living at home, as we have indicated above, even though such a move may have been anticipated at the time that agreement was made.

Plaintiff argues that defendant agreed in paragraph 8 of the agreement incorporated into the decree to pay the same amount of money until the death of the survivor of the twins, despite any change of circumstances with regard to their needs of condition. Paragraph 8 provides:

"The parties hereto have been advised by competent medical experts that the physical condition of David Wesley Needler and Lowell A. Needler is such that the amount of money necessary for their joint support, care, and maintenance would not be materially lessened in the event one of said children dies before the other, and that the provision hereinafter made as to the amount of money necessary for the support and care of both of them shall be continued in the same amount during the lifetime of the survivor."

■■ Plaintiff argues, essentially, that the terms of this paragraph preclude a modification of the child support provision. Section 19 of the Divorce Act (Ill. Rev. Stat. 1967, ch. 40, par. 19) expressly provides that "the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care,

custody and support of the children, as shall appear reasonable and proper." The incorporation of the property settlement agreement, including paragraph 8, into the divorce decree must be deemed to have been made in view of this statute, and such statute by implication became a part of the decree; and the fact that the decree adopted the terms of the agreement did not destroy or affect the power of the court to alter the child support provisions upon a proper showing of a change of circumstances justifying modification. *Adler v. Adler,* 373 Ill. 361; *Maginnis v. Maginnis,* 323 Ill. 113; *Herrick v. Herrick,* 319 Ill. 146.

Plaintiff testified that in 1963 when this agreement was made, "the conclusion we had reached there was a 2 year waiting list for them on account of the facilities in the State of Illinois, they weren't adequate for children not completely helpless and who still wanted to be at home. I was going to keep the children home. I had no choice."

Her testimony is clear that at that time the twins were kept in hospital beds in her home and cared for by Mrs. Kuhn, and the conclusion is evident that in the event of the death of one of the twins, the expenses for the support of the survivor would not substantially lessen so long as he was maintained at home.

■■■ Since the premise on which defendant promised to continue the same amount of support during the lifetime of the survivor, that is, that the amount of money necessary for the joint support, care and maintenance of the twins in plaintiff's home would not be materially lessened in the event of the death of one of them, has clearly been shown to have changed, the court should have granted defendant's petition to modify the provisions for support payments from the date of his petition. The support payments due until that date are vested and thus not subject to modification. *Gregory v. Gregory,* 52 Ill.App.2d 262; *Hallett v. Hallett,* 10 Ill.App.2d 513.

■■ Finally, defendant argues that the trial court erred in awarding plaintiff $1500.00 for attorney's fees in defense of this appeal, in that the trial court did not conduct an adequate hearing on this issue nor did it make findings of fact that plaintiff was unable and defendant able to pay attorney's fees, relying on *Berg v. Berg,* 85 Ill.App.2d 98 and *Jones v. Jones,* 48 Ill.App.2d 232. However, these cases are not authority for the proposition that findings of fact are necessary to support an order for attorney's fees, but that hearings should be held if requested and that findings of fact may supply deficiencies which otherwise might exist. (*Quagliano v. Quagliano,* 94 Ill.App.2d 233.) There is no record in this case of a hearing on the reasonableness of the attorney's fees or on the ability of defendant or inability of plaintiff to pay these fees, nor is there a showing in the record that such a hearing was requested by

defendant, and, as argued by plaintiff, where the order of the trial court states, "the court being fully advised in the premises," as it does in this case, it is proper to conclude "in the absence of any contrary indication in the order or in the record, that the court heard adequate evidence, received enough information or listened to sufficient law and argument as the necessity of the particular case required to enable the court to reach what it believed to be the right decision on the issue presented." *Smith v. Smith,* 36 Ill.App.2d 55 at 59; see also *O'Berry v. O'Berry,* 36 Ill.App.2d 163.

■■ The allowance of attorney's fees is ordinarily a discretionary matter with the trial court and is justified when the court finds one spouse is financially unable to pay the fees and the other is able to do so. (*Berg v. Berg, supra; Jones v. Jones, supra.*) On the basis of the record before us, we conclude that the trial court was adequately informed of the facts and law in this case and did not abuse its discretion in awarding attorney's fees to plaintiff in defense of this appeal.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed in part, reversed in part and remanded for proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

EBERSPACHER and JONES, JJ., concur.