HELEN P. LENZ, Plaintiff-Appellee, *v.* WALTER K. LENZ, Defendant-Appellant.

(No. 73-324; ▮▮▮▮▮▮▮▮▮▮

Second District (1st Division)—November 6, 1975.

*Rehearing denied December 4, 1975.*

Thomas G. McCracken, of Geneva, and Patrick T. Driscoll, of Chicago, for appellant.

Harry Schaffner, of Schaffner & Ariano, of Elgin, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant husband appeals from certain provisions of a decree granting his wife a divorce and other relief. He does not challenge the divorce, the child custody or the transfer of their home and certain personal property to her as alimony in gross. He points out that he suffers from schizophrenia and, since 1970, has been in and out of various mental hospitals, unemployed and without income. He contends that, insofar as the decree orders him (1) to pay support of $60 per week per child, plus certain medical and dental bills, and (2) to pay $3000 fees and $360 expenses to his wife's attorney, it ignores his complete inability to pay and is therefore excessive. He also (3) challenges certain provisions of the decree which purport to make future arrearages judgments and a "valid vested debt" against defendant at such time as his "expectancy" under his father's trust vests. We reduce the child support to $30 per week per child and reverse all other decretal provisions so challenged.

The parties were married on December 1, 1956, and lived together until April, 1970, when the defendant left and moved in with his mother. Three children, now 14, 15 and 17, were born to the parties. A complaint for divorce based on desertion by the defendant was filed by the wife in July, 1971. In the pretrial stages, the parties were not able to agree on a property settlement and child support payments.

The husband had been employed in his family's business, Charles Lenz and Sons, at $36,000 a year, until October, 1970, which was several months after leaving his wife. On October 31, 1970, he was hospitalized at Mercyville Hospital in Aurora for psychiatric treatment. He suffers from schizophrenia and was released from this initial perid of hospitalization on January 15, 1971. Thereafter, the defendant was in various mental hospitals, including Hines. His last hospitalization at Mercyville Hospital before the trial was from December 27, 1971, to May, 1972. The cost per diem as a patient at Mercyville exceeded $100.

During their marriage, the parties owned as joint tenants a five-acre tract of real estate on which the marital home, valued at approximately $115,000 was built in 1966. The unpaid balance due the first mortgagee was approximately $30,000 at the time of trial. The property was also encumbered by a second mortgage, in the amount of approximately $3,500, held by Patrick T. Driscoll, who has been the Lenz's family attorney and who was one of the attorneys representing the defendant in this divorce proceeding. At the time of trial, the plaintiff had paid all installments on the first mortgage since January, 1971, without contribution by the defendant. However, the second mortgage was in default, and the plaintiff had received a letter from Patrick T. Driscoll advising her of a potential mortgage foreclosure unless the default was remedied. Under the terms of the decree of divorce, this parcel of realty was awarded to the plaintiff as alimony in gross.

The plaintiff introduced as evidence the will of Charles Lenz, the husband's deceased father, which established two trusts, one termed the "Bessie Lenz" trust, which is not pertinent here, and a second, termed the "Residual Trust," which named his widow Bessie and Patrick T. Driscoll as trustees. It provided that the net income be paid to Bessie so long as she lives and that, upon her death, the remainder be divided into equal shares, one for each of his five children, including the defendant Walter, and the income paid to them for one year, at the end of which, if they survive, they shall receive the principal of their share. It also authorizes Driscoll, in his sole discretion, to pay to Bessie such additional sums out of principal as may be necessary for the comfort, welfare and maintenance of any of their children.

The corpus of the residuary trust consists of real and personal property valued at some $750,000. Patrick T. Driscoll, a cotrustee of this trust, testified that he made all of the temporary child support payments, which had been $25 per week per child. He also testified that he paid $500 pursuant to a court order awarding fees to the plaintiff's attorney. However, according to his testimony, none of these sums was paid under

any provision of the trust. Rather, these sums were personally paid by himself on behalf of the defendant, Walter Lenz.

The defendant testified that he was presently unemployed and living with his mother, and that he owed sums of money to his mother, to Patrick T. Driscoll, to his brother, Richard Lenz, to Mercyville Hospital, and to doctors, aggregating some $38,000. He testified that he was not aware that he had any interest in the Residual Trust. He also testified that he had originally owned shares of stock in the family business, which he had transferred to his brother, Richard Lenz, in part for cancellation of a debt owed and in part for cash. He did not remember the value of the stock at the time of the transfer; nor when the transaction occurred. His wife, Helen, he said, had no knowledge of any indebtedness to Richard Lenz or of the stock transfer.

The wife testified that the defendant had left their home in April, 1970, and did not do so for the purpose of receiving psychiatric treatment. As stated above, his initial admittance to Mercyville Hospital was on October 31, 1970. The wife also testified that she owned no assets other than her undivided interest as a joint tenant with Walter K. Lenz in their home. She was currently employed on a part-time basis earning $2.50 per hour. She was offered $115,000 for the home but refused it.

After considering the evidence presented at the trial, the court entered the decree from portions of which the husband has appealed. It should initially be noted that he does not challenge the divorce, the child custody or the transfer of their home and certain personal property to the wife as alimony in gross.

The husband's *first* contention is that the order that he pay support of $60 per child per week, plus certain medical and dental expenses, ignores his complete inability to pay and is therefore excessive.

The legal principles applicable to such situations are reflected at considerable length in Annot., 1 A.L.R.3d 324-376 (1965). At page 331 it concludes that:

> "The basic function of a child support award is to assure that a father provides adequately for a child who is not living with him, and the amount of the award depends exclusively on the child's need for support and the father's ability to meet such need."

This same view is reflected in *Gregory v. Gregory* (1964), 52 Ill.App.2d 262, 202 N.E.2d 139, where the court, at page 268, said:

> "The measure of the sum paid is the need of the wife or children and the ability of the husband to pay. Herrick v. Herrick, 319 Ill. 146, 149 N.E. 820."

See also *Needler v. Needler* (1971), 131 Ill.App.2d 11, 18, 268 N.E.2d 517; *Schluter v. Schluter* (1972), 5 Ill.App.3d 698, 283 N.E.2d 924.

*Weiland v. Weiland* (1963), 255 Iowa 477, 122 N.W.2d 837, 839-840; *Gilbert v. Gilbert* (Cal.App. 1950), 220 P.2d 573, 574; *Commonwealth ex rel. Yeats v. Yeats* (1951), 168 Pa.Super. 550, 79 A.2d 793, 795.

The wife's position is that the court should, in fixing its support award, also take into consideration the possibility of gifts or advances under the residual trust, and cites *Vought v. Vought* (1959), 195 N.Y.S.2d 521, 22 Misc.2d 356, where, under somewhat similar circumstances, an award for support was reduced to 100 percent of the husband's wages. This case does not really support the wife's position here in that one hundred percent of the husband's wages would still be zero. Furthermore, as the court there said, at page 524,

> "The court cannot base its decision upon sheer speculation or the plaintiff's suspicion that her husband has hidden substantial means to warrant granting to her the sum of $350 per week as permanent alimony and the sum of $30,000 as counsel fee. Nor can the court take into consideration, in fixing the counsel fee for legal services rendered on behalf of the wife in this separation suit, the claim, denied by the defendant, that he will inherit over one million dollars upon the death of his mother. At most, it is contingent, not present property of the defendant."

We conclude that the possibilities that the husband may, if he outlives his mother, eventually inherit considerable money from his father's residual trust or that his mother or the other trustee may make gifts or advances to him—should not be a basis for a present support award. On the other hand, we conclude and hold that the mere fact that the husband has no income at present should not completely bar any support order whatsoever.

In view of the facts of this case and the law applicable thereto, we reduce the award for child support from $60 to $30 per child per week.

The husband's *second* contention is that his same present inability to pay demonstrates that the trial court erred in ordering him to pay $3,000 fees and $360 in expenses to his wife's attorney.

The rule is well established in Illinois, as is said in *Berg v. Berg* (1967), 85 Ill.App.2d 98, 101, 229 N.E.2d 282, 101, that:

> "Attorney's fees are only justified when the court finds that one spouse is financially unable to pay the fees and the other spouse is able to do so."

See also *Jones v. Jones* (1964), 48 Ill.App.2d 232, 198 N.E.2d 195.

Applying this rule to the facts in the case at bar, it is obvious not only that the husband is not able to pay such fees and expenses, but that his wife is. He has no present employment or income or assets while

she owns and occupies the family home, worth some $115,000 which she could (and probably should) sell.

We therefore reverse the award of fees and expenses to the wife's attorney.

The husband's *third* and last contention is that the court erred in further providing that:

> "In the event that an arrearage shall accrue, said arrearage shall be deemed to be a judgment against Walter K. Lenz, and shall bear interest in accordance with the interest rate in effect from time to time upon judgments, and shall be specifically deemed a valid vested debt against defendant at such time as his expectancy, under the testamentary trust of his late father, Charles Lenz, shall become vested."

■■ It is clear that under Illinois law, although a decree for alimony or maintenance may be "made a lien on any real estate to secure the payment of any money to become due by installments" (Ill. Rev. Stat. 1971, ch. 40, § 21), the court in a divorce case has no power to make a money decree a lien on personal property. (*Griswold v. Griswold* (1903), 111 Ill.App. 269; *Yelton v. Handley* (1888), 28 Ill.App. 640.) A more recent case is *Schwarz v. Schwarz* (1963), 27 Ill.2d 140, 188 N.E.2d 673, where our Supreme Court, at page 150, said:

> "This leaves the question of whether the trial court erred in impressing a lien on defendant's personal property to secure the payment of the award. *Yelton v. Handley*, 28 Ill.App. 640, involved a situation where an alimony decree was declared to be a lien on real and personal property of defendant. The court observed that section 44 of the Chancery Act, relating to the lien of a money decree, and section 45 of that act, relating to the lien of other decrees, each referred only to liens on real estate. Applying the rule of *expressio unius exculsio alterius est*, the court held that an alimony decree could not be made a lien on personal property. This holding was followed or approved in *Griswold v. Griswold*, 111 Ill.App. 269; *Peck v. Peck*, 214 Ill.App. 41; and *Williams v. Williams*, 279 Ill.App. 274. Sections 44 and 45 of the Chancery Act (Ill. Rev. Stat. 1959, chap. 22, pars. 44 and 45,) have not been amended to specifically give a court the power to make an alimony decree a lien on personal property nor has the legislature made such provision in the Divorce Act. The legislature has acquiesced in the holding of the *Yelton* case, which was decided in 1887 and has been followed on several occasions, and we would not now be justified in reaching a different result. See *Knierim v. Izzo*, 22 Ill.2d 73."

The only way under *Illinois* law to make an award for future support a lien on the husband's personal property would be to go into court after the arrearage has in fact accrued and have such arrearage reduced to a judgment, issue an execution thereon and deliver the execution to the sheriff (Ill. Rev. Stat. 1971, ch. 22, §§ 44, 45, 46; ch. 77, §§ 1, 4, 9, 43).

■ We therefore conclude that what the trial court is here attempting to accomplish, in the portion of the decree above quoted, is beyond its power and we therefore sustain the husband's third contention and reverse said decretal provisions.

In summary, the support award is reduced from $60 to $30 per week per child and the other decretal provisions challenged by the husband are reversed.

Modified in part and reversed in part.

SEIDENFELD, P. J., and GUILD, J., concur.