PHYLLIS ROBIN, a/k/a Phyllis Eisenberg, Plaintiff-Appellee, *v.* STEPHEN H. ROBIN, Defendant-Appellant.

First District (5th Division)   No. 62843

Opinion filed January 13, 1977.

Anthony J. Pauletto, of Chicago (Harry G. Fins, of counsel), for appellant.

Torme, Horwich & Briskman, of Chicago (Robert I. Briskman, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from an order in a post-divorce proceeding which increased his child support payments from $45 per week to $1,000 per month, created a $13,715 deficiency in child support, required defendant to purchase a $50,000 life insurance policy for his child's benefit, and awarded a guardian ad litem $5,000 in fees and plaintiff's attorney $2,500 in fees.

He contends that (1) the trial court abused its discretion by increasing child support, by creating a deficiency, by requiring security, by appointing a guardian ad litem and by awarding fees to the guardian and to plaintiff's attorney, and (2) the appointment of a guardian ad litem violates article VI, section 14 of the Illinois Constitution.

On February 11, 1974, plaintiff filed a petition to modify her divorce judgment. She alleged that the parties were divorced by a judgment entered on May 6, 1968, which provided that she would have custody of

Bonnie Ileen, a child of the parties, that defendant, based upon his 1967 wage and tax statement issued by Harbor Management Company, would pay $45 per week until Bonnie reached majority and that no insurance benefits for Bonnie were included in the judgment. She represented that defendant's income had increased and that a material and substantial change in the circumstances of the parties had occurred.

Defendant's answer and cross-petition alleged, *inter alia*, that plaintiff and her new spouse were threatening his life, hindering his visitation rights, and frustrating his attempts to foster a father-daughter relationship.

On April 25, 1974, the following pertinent evidence was adduced at a hearing on the petition.

*For plaintiff:*

*Defendant under section 60*

His adjusted gross income in 1973 was $114,000 and was approximately $70,000 after taxes. He owned a 10% interest in Carlton House nursing home, Princeton House and Harvard House. He owned a 50% interest in the Harbor Mortgage Company which had a total net worth of $100,000. His estimated worth was between $200,000 and $500,000. He gave Bonnie a one- or two-percent interest worth approximately $4,000 to $5,000 in some Arizona ranch property. He did not own an insurance policy of which Bonnie was a beneficiary.

*Plaintiff*

She married Sol Eisenberg in May, 1970. They reside in a condominium worth $90,000 to $95,000 at 1212 Lake Shore Drive in Chicago with their one-year-old daughter and Bonnie. She and Sol had purchased a home in Northbrook for $101,000 which they planned to move into in August, 1974. She is not employed and has no source of income. Sol is her sole source of support. She owns some jewelry and has a $1,000 savings account. She pays Bonnie's ordinary medical expenses.

Bonnie was attending a public school. She had attended a day camp last summer which cost $385 for the summer and would attend an overnight camp the following year which cost $1,000. Although she had taken swimming, ice skating, drama and art lessons in the past, she was currently taking only piano lessons at the cost of $10 per week. She sees a doctor approximately once a month and wears corrective shoes.

At the conclusion of plaintiff's testimony, the trial court indicated it would appoint a guardian ad litem to act on Bonnie's behalf. Defendant objected to the appointment on the grounds that both parents were concerned about Bonnie and were providing for her best interest, and that no evidence of any problem had been adduced which required the services of a third party. The court agreed to take the appointment under advisement.

On September 11, 1974, plaintiff's counsel represented that plaintiff was asking for $115.38 per week in child support. Over defendant's protest, the court appointed attorney Ellis Rosenzweig to act as Bonnie's guardian ad litem.

On March 14, 1975, hearings were resumed with the guardian ad litem present for the first time. The following pertinent evidence was adduced on that date and at subsequent hearings.

*Plaintiff*

Although her second husband Sol had retired and had been unemployed since July, 1974, he received $1,500 per month rent from his former business. She has a $500 checking account and is trustee for Bonnie's $1,000 savings account. They recently sold their Lake Shore Drive condominium for $85,000 and put $50,000 down on the purchase price of their new home in Northbrook.

The following list of expenses for Bonnie was then admitted into evidence to summarize plaintiff's testimony.

### MONTHLY EXPENSES—BONNIE ROBIN

| | *MONTHLY* | *FOR BONNIE* |
|---|---|---|
| 1. HOUSING | $387.00 | $ 95.00 |
| 2. TAXES | $200.00 | $ 50.00 |
| 3. INSURANCE | $ 29.17 | $ 7.25 |
| 4. WATER | | |
| 5. GAS | $ 40.00 | $ 10.00 |
| 6. ELECTRICITY | $ 40.00 | $ 10.00 |
| 7. LANDSCAPING | $ 60.00 | $ 15.00 |
| 8. TELEPHONE | $ 55.00 | $ 13.75 |
| 9. DOMESTIC HELP | $200.00 | $ 50.00 |
| 10. VACATION HELP | $ 29.17 | $ 14.58 |
| 11. SCHOOL SUPPLIES | | $ 2.00 |
| 12. SCHOOL BUS | | $ 7.00 |
| 13. CLOTHING | | $100.00 |
| 14. VACATIONS—CAMP | | $125.00 |
| 15. FOOD | $500.00 | $125.00 |
| 16. ENTERTAINMENT AND EXTRAORDINARY ITEMS | | $ 10.00 |
| 17. ICE SKATING LESSONS | | $ 8.00 |
| 18. SKATES | | $ 5.00 |
| 19. ANTICIPATED TEMPLE MEMBERSHIP | | $ 14.58 |
| 20. OTHER FUTURE LESSONS (ESTIMATED) | | $ 8.00 |
| 21. DRUGS | | $ 12.50 |
| 22. LAUNDRY AND CLEANING | | $ 10.00 |
| 23. DENTAL | | $ 8.00 |
| 24. MEDICAL | | $ 16.50 |

Bonnie's monthly expenses were computed by dividing the family's annual expenses by 12 and then dividing that figure by 4 "because we have four people in our home." Most of Bonnie's clothes were purchased at Marshall Field's and at Saks Fifth Avenue. Currently Bonnie was taking only piano lessons which cost $60 per month and ice skating lessons which cost $8 per month. She was enrolled for summer camp. Plaintiff admitted that Bonnie was not attending temple nor a private school. Bonnie was currently taking no other medication besides her special vitamins. Restaurant meals had been categorized in her list as "entertainment expenses." She recently purchased a new bedroom set for Bonnie which cost $1,000.

Defendant was paying all of Bonnie's eyeglass expenses. He visits Bonnie on weekends and on Wednesday evenings for dinner. He had taken Bonnie to Spain on vacation with his new family last summer. He instructed Bonnie not to call Sol her "daddy." Bonnie was a happy, loving child who cared for her baby sister and had many friends.

When questioned by the guardian ad litem, plaintiff added that she also gave Bonnie money for party gifts in addition to her $1 per week allowance. She later stated that Bonnie had been nervous and excited by defendant's visits prior to the time the guardian had been appointed.

*Defendant on his own behalf*

His 1974 salary from Harbor Mortgage Company and Robin Construction Company had been $41,900. He was no longer employed by Robin Construction Company. Although he had received $22,300 in dividends from Harbor Mortgage Company in 1974, he had not received any dividends in 1975. After all taxes were deducted, he was currently making $2,900 per month from his partnership interests and salary. His annual expenses included $8,100 interest on outstanding loans, $4,000 for real estate taxes and $2,000 for charitable contributions. Since his divorce from plaintiff he had also remarried and had another child by his second wife. He admitted giving his new wife $10,000 to purchase land for a house in Glencoe, but added that they currently had no plans to move to that location.

When questioned by the guardian ad litem, defendant stated that the appointment of the guardian and the guardian's visit with Bonnie first apprised Bonnie of this litigation and upset the child physically and emotionally. He denied upsetting Bonnie by his own actions. He felt $45 per week was adequate support based upon expenses he had been given by plaintiff, and, over plaintiff's objection, added that he had offered to pay $60 per week to avoid litigation.

OPINION

■■ Defendant contends the trial court abused its discretion by

increasing child support payments from $45 per week to $1,000 per month. Section 18 of the Divorce Act provides in pertinent part:

> "The court may, on application, from time to time, terminate or make such alterations in the allowance of alimony and maintenance, and the care, education, custody and support of the child, as shall appear reasonable and proper." (Ill. Rev. Stat. 1975, ch. 40, par. 19.)

This court has held that a modification of a prior support order is "reasonable and proper" when there has been a material change of circumstances in the needs of the child and the ability of the parent to pay. (*Duvall v. Duvall* (1972), 8 Ill. App. 3d 53, 289 N.E.2d 59; *Needler v. Needler* (1971), 131 Ill. App. 2d 11, 268 N.E.2d 517.) Both parents share an equal duty to support the offspring of their prior union. *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.

Petitions to modify child support payments must be decided on the facts and circumstances of each case. Consequently, modifications of child support payments rest within the sound discretion of the trial court and this court will not interfere with that discretion in the absence of its abuse. *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161 (abstract opinion); *Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820.

■■ In the instant case the trial court increased defendant's payments over 500%. There is adequate evidence in the record that Bonnie's needs had increased to some extent. Nonetheless, the trial court's order exceeded even plaintiff's most liberal requests by over $250 per month. Even if we accept a nine-year-old child's *monthly* expenses as including $125 for food, $125 for clothing, and an absolute one-quarter share of all household expenditures, such as landscaping and domestic help services, it is clear that plaintiff cannot seek an increase in support based upon conjectured future expenses such as "anticipated temple membership" and "other future lessons" which do not represent current needs of the child. *Cf. Gomberg v. Gomberg* (1974), 24 Ill. App. 3d 140, 320 N.E.2d 461 (abstract opinion).

■■ Defendant's ability to fulfill his duty to support has also increased to some extent. Defendant was earning approximately $13,650 per year at the time of the original judgment. At the hearing on plaintiff's petition, defendant admitted current earnings of $2,900 per month from wages and dividends. Evidence which showed fluctuations in defendant's income during the years after the entry of the original divorce judgment, but before the filing of plaintiff's petition to modify, is irrelevant to the question of defendant's current earnings.

■■ Defendant argues that the money received by plaintiff from her current husband is a factor which the trial court should have considered in

determining the ability of plaintiff to support the child. To the contrary, the financial status of a divorced parent's current spouse should not be considered in determining the ability of that spouse to fulfill his or her duty to support. (*Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820.) Although we recognize that plaintiff had an equal duty to pay for her child's support, defendant never proved that she possessed the ability to fulfill that duty. Evidence of a small checking and savings account funded solely by plaintiff's second husband is insufficient to establish her ability to pay.

■■ Nonetheless, we believe that manifest weight of the evidence did not warrant an increase of more than 500% in support payments in light of the needs of the child and the increase in defendant's ability to pay. Consequently, we will reverse the judgment of the trial court and remand the cause for a new determination of the proper amount of increase based upon the factors discussed above. Because the creation of a $13,715 deficiency was based upon the erroneous increase in support payments, we also reverse that part of the trial court's judgment and remand the issue for consideration with the question of the proper amount of support.

Defendant next contends the trial court abused its discretion by requiring him to purchase a $50,000 life insurance policy to secure his support payments. He argues that the original judgment did not require security and, thus, any subsequent order is not a modification of the original judgment. Section 18 of the Divorce Act as previously stated provides for the modification of child support and further specifically states:

> "In any order entered pursuant to this Section, the court may order the defendant to give reasonable security for such alimony and maintenance or such money or property settlement * * *." (Ill. Rev. Stat. 1975, ch. 40, par. 19.)

Security can also be required to insure child support. (*Imbrie v. Imbrie* (1968), 94 Ill. App. 2d 60, 236 N.E.2d 381.) We hold, therefore, that a court can require defendant to give reasonable security when it enters a modification order pursuant to section 18 of the Divorce Act.

■■ Nonetheless, in this case the $50,000 policy was ordered to secure payment of an erroneously computed award. Consequently, we will reverse and remand this issue with directions to review the proper amount of insurance required to secure the support payments as they may be modified.

■■ ■ Defendant also argues that plaintiff was not entitled to attorney's fees. Attorney's fees may be awarded in proceedings to modify child support payments. (*Nordstrom v. Nordstrom* (1976), 36 Ill. App. 3d 181, 343 N.E.2d 640.) The allowance of fees rests within the sound

discretion of the trial court. (*Saxon v. Saxon* (1960), 24 Ill. App. 2d 116, 164 N.E.2d 248.) Attorney's fees are warranted whenever the party seeking relief shows a financial inability to pay and the ability of the other spouse to do so. (*Lenz v. Lenz* (1975), 33 Ill. App. 3d 568, 337 N.E.2d 195.) Here, it is clear that plaintiff was without sufficient assets of her own to pay her attorney's fees. (See *Popeil v. Popeil* (1974), 21 Ill. App. 3d 571, 315 N.E.2d 629.) Defendant never argued that he was unable to pay plaintiff's attorney's fees. Under these circumstances, we cannot say the trial court abused its discretion in awarding attorney's fees to plaintiff.

■■ Defendant finally contends the appointment of a guardian ad litem violated article VI, section 14, of the Illinois Constitution. At no time did defendant raise this constitutional challenge in the court below. To the contrary, defendant objected on the specific ground that the best interests of the child did not require representation by a third party. Defendant would have this court take judicial notice of many facts and customs which he alleges are practiced by this trial court regarding court appointed guardians ad litem. However, a reviewing court will not consider constitutional issues in a civil case which are raised for the first time on appeal. (*In re Adoption of Kleba* (1976), 37 Ill. App. 3d 163, 345 N.E.2d 714; *Skach v. Heakin* (1975), 28 Ill. App. 3d 346, 328 N.E.2d 59.) Moreover, we believe the best interests of justice would not be served by deciding this issue in a factual vacuum based upon speculation rather than competent evidence and a complete record. Consequently, we reject defendant's second contention insofar as it is based upon a constitutional claim which was not preserved for review.

■■ Nonetheless, defendant has preserved his objection to the guardian's appointment on the grounds that the best interests of the child were not shown to be in danger when the guardian was appointed. A guardian ad litem is a person appointed by the court to prosecute or defend on behalf of a minor in any suit in which the minor may be a party. (See *Crawford v. Amusement Syndicate Co.* (Mo. 1931), 37 S.W.2d 581; Black's Law Dictionary 834 (4th ed. 1968).) In the instant litigation the child was not a party to the suit. Moreover, the trial court had heard no evidence that the best interests of the child were in any way being jeopardized prior to the time it appointed the guardian. All of the evidence adduced to that point in time related solely to financial matters. After the guardian ad litem had been appointed, further evidence showed that both parties were attempting to keep the dispute from the child so that she would not be upset. Despite plaintiff's later testimony that a rift had developed between defendant and his daughter, defendant testified that it was the guardian's visit and interview that upset the child. Even if we were to accept plaintiff's version of this rift, the fact remains that all evidence concerning the child's best interest was presented after the

guardian's appointment. We believe that an appointment of a guardian for a child who was not a party to the action and without an evidentiary showing of the need for a guardian was an abuse of the trial court's discretionary power.

For the reasons stated, the judgment of the circuit court insofar as it increased child support, required a $50,000 life insurance policy as security, and created a $13,715 deficiency in payments is reversed and the cause is remanded for further consideration not inconsistent with the views herein. The judgment insofar as it awarded attorney's fees is affirmed. The trial court's order appointing a guardian ad litem and the subsequent award of fees to the guardian are reversed.

Affirmed in part; reversed in part; and reversed and remanded in part.

SULLIVAN, P. J., and DIERINGER, J., concur.