RAYMOND J. REGAN, Plaintiff-Appellant, *v.* PATRICIA K. REGAN, Defendant-Appellee.

First District (5th Division)   No. 76-1503

Opinion filed September 16, 1977.

Edward L. Overtree, of Chicago, for appellant.

Thomas F. Geraghty and Jay R. Conner, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff initially brought this action seeking the modification of a separate maintenance decree, but the proceedings were expanded to include petitions filed by both plaintiff and defendant in which each charged the other with violating the provisions of a decree. After a hearing, the trial court modified the decree and found plaintiff in arrears in child-support payments. From this judgment he appeals, contending that the trial court erred in failing to hear evidence from him, in failing to order the children to visit him, and in ordering support payments in excess of his ability to pay.

The decree of separate maintenance gave defendant sole custody of the parties' three children and ordered plaintiff to pay the sum of $466.67 per month as and for child support and the sum of $233.33 per month in alimony. This decree was later modified to require child-support payments of $75 per week if plaintiff earned less than $300 per week, but the payments would increase to $100 per week if his weekly earnings were more than $300. The decree was then again modified directing him to pay 40% of his net pay as child support, and a finding was entered that he was then in arrears in the sum of $11,754.60. The proceedings in question resulted in an arrearage finding of $13,250 and an order that plaintiff make a weekly payment of 40% of his net income per week, with a minimum of $75 per week, as and for child support.

At trial, plaintiff called no witnesses; however, he and his present wife were called by defendant under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 60.) While their testimony was in agreement that plaintiff's gross earnings were $200 per week, there was substantial disagreement as to his weekly net income. His wife testified that his net earnings varied between $100 and $150 per week, but when plaintiff was questioned concerning such income his attorney interjected that payroll

stubs had been produced which indicated a net income of $170 per week. Plaintiff and his wife further testified that it was his practice to deposit amounts which would fulfill his child-support obligations in a separate bank account and then commingle the remainder of his salary with that of his wife's in a second account from which their living expenses were paid.

Defendant testified that she was presently unemployed and that her only separate resources had been loans from her brother and unemployment compensation. Should she remain unemployed, she intended to seek public assistance.

Although plaintiff alleged that the children had been forbidden by defendant from speaking to him and that mail and gifts addressed to them by him had been returned by defendant without the knowledge of the children, no such evidence was produced at trial. When plaintiff requested that the children be ordered to visit with him during the appointed visitation periods, the court called the children and counsel into chambers for questioning. Thereafter, it refused to render such an order, stating:

> "For the record, I will state that I had the two younger girls, Lisa, age twelve and Patty, age fourteen, separately in my chambers in the presence of the two attorneys. I asked them with regard to the question of visitation with the father and the extent of their sentiment for or against the father and so on in the presence of the attorneys and they told me that the father in the past neglected them [*sic*] to show them any interest, but on the contrary displayed interest in some other member, not of this family that they don't care to see him or to visit with him.
>
> I am not calling the oldest girl, because she is seventeen and in a few months, she will be an adult. Unless Counsel wishes to call her in chambers, you are free to do so, but based on what I heard in response to my questions and in response to the attorneys' questions to these two girls, I have to conclude that the scars that they apparently suffered, rightly or wrongly, I don't know, would make it very difficult for me to say to them that I would put you through some form of command."

OPINION

Plaintiff first contends that "the trial court erred in failing to hear evidence from plaintiff." The entirety of his argument on this point is stated in his brief in two sentences, as follows: "Due process in Illinois includes the right to call witnesses in one's behalf. Refusal of this right has been held to be reversible error." In support, he cites only *Marr v. Marr* (1963), 43 Ill. App. 2d 25, 192 N.E.2d 559.

■■ The general rule, as stated in *Marr*, is that a litigant's right to

produce witnesses on his behalf is basic to our system of justice and a court should be most circumspect in placing any restriction on the exercise of this right where the testimony sought to be produced concerns a controlling or controverted fact. A trial court, however, is not required to demand the production of evidence by a litigant who, although present and represented by counsel, does not offer such evidence. *Kinzora v. Kinzora* (1976), 37 Ill. App. 3d 290, 345 N.E.2d 499.

■■ Here, the only testimony produced was that of defendant and that of plaintiff and his present wife, who were called by defendant as section 60 witnesses. Plaintiff did not choose to exercise his right to call further witnesses, and neither he nor his wife again testified as they had the right to do. Not only does the record contain no order of the trial court restricting these rights; but, also, there is no indication in the record nor any contention by plaintiff here that he even attempted to call any other witnesses. Therefore, we reject the first contention of plaintiff.

■■■ Defendant also argues that the trial court's examination of the children was improper. In a divorce proceeding, it has been held to be reversible error for the trial court to examine the parties' children in chambers without the attendance of counsel where their testimony concerns the contested grounds for divorce. (*Albert v. Albert* (1950), 340 Ill. App. 582, 92 N.E.2d 491.)

> "However, since *Oakes v. Oakes*, 45 Ill. App. 2d 387, 195 N.E.2d 840, the rule has been that the welfare of the child is paramount in custody decisions and, in that regard, interviews with the children by the court are permissible. [Citation.] Thus, the rule presently appears to be that a private interview with children involved in a divorce proceeding is permitted to assist the court in determining custody but '[t]o protect the right to appeal, the court upon motion should state for the record, if that becomes necessary, the substantive parts of the child's statement to him.' [Citation.]" (*Seniuta v. Seniuta* (1975), 31 Ill. App. 3d 408, 416, 334 N.E.2d 261, 267.)

In matters of visitation, as well as custody, the primary concern is the welfare of the child (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347; *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 348 N.E.2d 507); therefore, we believe that the rule of *Seniuta v. Seniuta* is equally applicable in cases involving visitation privileges.

■■ Here, custody of the parties' three children had been granted to defendant by the separate maintenance decree. Plaintiff sought to modify that decree by requesting an order commanding the children to accompany him whenever he exercised his visitation privileges. It was in addressing this issue that the trial court interviewed the children in chambers while counsel for both parties were in attendance.

Furthermore, counsel were allowed to question the children at the interview, and its substance was made part of the record by the court. Therefore, we do not believe that the trial court erred in its conduct of the in-chambers examination of the children.

■■■ Plaintiff next contends that in effect he was denied visitation privileges by the failure of the court to order the children to accompany him whenever he exercised his right to visit. We disagree. The award of visitation privileges rests within the sound discretion of the trial court and, absent a showing of manifest injustice, such determinations will not be disturbed by a court of review. (*Patton v. Armstrong* (1972), 6 Ill. App. 3d 998, 286 N.E.2d 351.) The paramount issue in granting visitation privileges is the best interests of the child, and it is generally thought that liberal visitation provisions for the noncustodial parent promotes the welfare of the child, as this avoids potential estrangement. (*McManus v. McManus*.) While limitations placed upon visitation privileges are valid where they tend to promote the welfare of the child (*Malone v. Malone* (1955), 5 Ill. App. 2d 425, 126 N.E.2d 505), it is inequitable and unjust to absolutely deny visitation where the facts and circumstances do not establish that such a denial would be in the best interests of the child. *Zechman v. Zechman* (1945), 391 Ill. 510, 63 N.E.2d 499.

■■ Here, the trial court granted plaintiff visitation privileges on alternate Saturdays and Sundays between noon and 5 p.m. After the children informed the court that they had been neglected by plaintiff in the past and that they preferred not to visit him, the court refused to command them to accompany plaintiff when he exercised his visitation privileges; but, instead, counseled him that he ought to personally strive to regain their affection. Under the circumstances, it cannot be said that the trial court abused its discretion.

■■ We would note further that plaintiff alleged, but offered no proof, that the actions of defendant rather than any acts or omissions on his part had estranged the children. As the trial court enjoined each of the parties from interfering with the exercise of the other's rights, plaintiff is afforded a means of redress should defendant attempt to prevent his future visitation with the children.

Lastly, plaintiff contends that the modified child support payments were in excess of his ability to pay. Again, we disagree. The modification of provisions for payment of child support is a matter for the sound discretion of the trial court and, absent an abuse of discretion, its determination will not be disturbed on appeal. (*Scalfaro v. Scalfaro* (1970), 123 Ill. App. 2d 23, 259 N.E.2d 644.)

> "In general, the amount of child support to be allowed must be determined by accommodating the needs of the children with the available means of the parties. [Citation.] Among the factors to be

considered in determining the amount of child support are: the ages of the parties; their condition of health; the property and income of the husband; separate property and income, if any, of the wife; and the station in life of the parties. [Citation.]" *Knox v. Knox* (1975), 31 Ill. App. 3d 816, 823, 334 N.E.2d 891, 896-97.

Here, defendant testified that she was unemployed and that her resources had included loans from her brother and, when the unemployment compensation payments she was receiving were discontinued, her only source of revenue would be public assistance. Although he had suffered periods of unemployment in the past, at the time of trial plaintiff was earning a gross salary of $200 per week, and his present wife testified that his net income varied between $100 and $150 per week. Plaintiff was nonresponsive when questioned regarding his net income; however, his attorney volunteered the information that payroll stubs had been produced showing a net income of $170 per week.

Plaintiff's practice was to deposit the amount of his child support obligation in a separate bank account and to commingle, in a second account, the remainder of his salary with that of his wife's. Their living expenses were then paid out of this account. While they testified in vague terms concerning the repayment of personal loans with which two used cars had been purchased, they did not report any extraordinary debts or indicate difficulty in remaining current on their living expenses so long as plaintiff was employed.

■■ At the time of trial, three of the children were minors, and the trial court ordered child support payments in the amount of 40% of plaintiff's net income, with a minimum of $75 per week. On the facts before the trial court, we cannot say that such an order was excessive, constituting an abuse of discretion. Moreover, as the eldest daughter attained the age of 18 on April 28, 1977, plaintiff may again petition for a modification. *Venegas v. Venegas* (1977), 46 Ill. App. 3d 998, 361 N.E.2d 658.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.