*In re* MARRIAGE OF THOMAS C. BROPHY, Petitioner-Appellant, and
KATHLEEN C. BROPHY, Respondent-Appellee.

First District (5th Division)   No. 79-741

Opinion filed May 15, 1981.—Modified on denial of rehearing June 26, 1981.

Harry Golter, of Chicago (Overton, Schwartz & Fritts, Ltd., of counsel), for appellant.

Hynes, Colson, Karnezis & O'Rourke, of Chicago (James J. O'Rourke, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

A judgment of dissolution of marriage was entered in the first phase of a bifurcated trial. In the second phase an order awarded custody of the parties' four children to respondent, visitation to petitioner, and child support as well as attorney's fees to respondent's attorney and to the children's court-appointed attorney. Petitioner appeals the order as to visitation, child support and the fees awarded.

On appeal, petitioner contends that: (1) the visitation schedule was arbitrarily imposed; (2) excessive child support was awarded without considering the financial resources and needs of the parties; (3) an attorney for the children was improperly appointed without a hearing and without guidelines; (4) the appointed attorney failed to act reasonably in fulfilling her role; (5) excessive fees were awarded the appointed attorney; (6) excessive fees were awarded respondent's attorney; and (7) the division and award of attorney's fees against petitioner was an abuse of discretion absent evidence of the parties' respective abilities to pay.

The parties were married in 1962 and separated in 1972. Respondent thereafter retained custody of the four children born of that marriage; Mike (15), Ed (13), Kathy (10) and Patrick (7). On October 6, 1977, petitioner filed a petition for dissolution of marriage and respondent filed a counterpetition. A bifurcated trial was had. The judgment of dissolution was entered on March 31, 1978, and is not challenged by either party. Custody and support of the children were to be determined in the second phase of trial.

On June 1, 1978, after the parties had filed cross-petitions for sole custody of the children, an order was entered which referred the matter to the Department of Supportive Services for investigation and provided that petitioner have temporary visitation every other weekend from Saturday noon until Sunday at 8 p.m. On August 3, 1978, the court *sua sponte* appointed a legal representative for the minor children.

Thereafter, a hearing was had as to custody. The court on September 5, 1978, announced its decision awarding sole custody to respondent and awarding visitation to petitioner. The visitation provided alternative weekends during the school year from 10 a.m. Saturday until 8 p.m. Sunday and during summer vacations from 4 p.m. Friday until 9 p.m. Sunday, with alternating spring vacations and specified holidays. Petitioner was also granted visitation of one full month during the children's summer vacation. A custody "decree" was entered October 23, 1978, and supplemented on November 20, 1978, which in addition to the foregoing further provided that petitioner pay $500 per month as child support, abated by 50 percent during the month of summer school vacation which the children spent with petitioner.

On September 14, 1978, the appointed attorney filed her petition for fees and costs requesting $8425.20. Respondent's attorney filed a petition requesting fees of $7857.50. Petitioner filed briefs and responses to both petitions. The appointed attorney filed a reply and a brief. The court awarded respondent's attorney $6000 payable $1000 by respondent and $5000 by petitioner. The appointed attorney was awarded $4000, inclusive of costs, payable $1000 by respondent and $3000 by petitioner.

Petitioner's written motions to vacate the orders as to custody, support, visitation and fees were denied. This appeal followed. The order as to custody is not before us.

OPINION

I

Petitioner first contends that the trial court abused its discretion by arbitrarily granting the same limited visitation schedule it awards all noncustodial parents rather than considering the particular circumstances of the instant case. In announcing its decision the trial court stated:

"I think visitation with the natural father should be in this case as the Court orders it in each and every case, * * *. Because that's what I do in any case. * * * This is what I do on each and every occasion where I split children between two households. I'm not saying that I'm right. I'm only saying I am consistent. I may be consistently wrong in your opinion. So be it, but that's what I do."

■■ Section 607(a) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1977, ch. 40, par. 607(a)) provides that the noncustodial parent is entitled to "reasonable visitation rights." Nonetheless, the policy of this State is to grant liberal visitation rights. (*Regan v. Regan* (1977), 53 Ill. App. 3d 50, 368 N.E.2d 552; *Valencia v. Valencia* (1977), 46 Ill. App. 3d 741, 360 N.E.2d 1384, *modified on other grounds* (1978), 71 Ill. 2d 220, 375 N.E.2d 98.) In matters of visitation, as in custody, the primary concern of the court is the welfare of the child. (*Regan v. Regan*; *Valencia v. Valencia*.) The best interest of the child is normally fostered by having a healthy and close relationship with both parents. (*Hock v. Hock* (1977), 50 Ill. App. 3d 583, 584, 365 N.E.2d 1025, 1027; *Doggett v. Doggett* (1977), 51 Ill. App. 3d 868, 872, 366 N.E.2d 985, 988.) In order to effectuate the child's best interest, the award of visitation privileges rests within the sound discretion of the trial court and, absent a showing of manifest injustice, such determinations will not be disturbed by a court of review. *Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347; *Valencia v. Valencia*; *Regan v. Regan*.

Petitioner's reliance on *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 348 N.E.2d 507, is misplaced. The court there held that visitation of one full day per month, although limited, is not so limited as to cause a manifest injustice to either the noncustodial parent or child. Petitioner further relies on *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164, which affirmed an order continuing a visitation schedule previously worked out by the parties. However, *Blazina* did not even remotely suggest that such agreements should be followed but rather held that the trial court under the circumstances did not abuse its broad discretion in continuing a visitation schedule which amounted to every other weekend and one full week during the child's summer vacation.

Although petitioner correctly notes that the court characterized the portion of its ruling relating to Friday visitation as arbitrary, the record demonstrates that the schedule, as a whole and as to Fridays in particular, was in fact tailored to the Brophy family. The court carefully considered that the disparity in the ages of the children justified a restricted schedule. In denying the petitioner's request to begin the weekend visitation on Friday evening rather than Saturday morning, the court noted that during the school year the children often engage in school activities on Friday. Accordingly, Friday visitation as requested was limited to the children's

summer vacation. In denying petitioner's request for visitation of one week per month during the school year, the court commented it did not feel this ever worked out. Finally, petitioner's vacation time was also taken into account in allowing him extended visitation during the childrens' summer vacation.

The trial court's primary concern was the best interests of the children. Petitioner's request to increase the visitation schedule was considered in light of the children's needs and convenience. There is no indication that respondent was unfairly favored over petitioner or that the present visitation will not foster a healthy and close relationship with both parents. Consequently, we cannot say the visitation schedule was manifestly unjust or that it did not provide reasonable visitation. Petitioner's reliance upon the statement of the court to establish an arbitrary ruling is without merit.

## II

Petitioner next contends that the award of $500 per month child support is excessive and that the trial court abused its discretion in basing the award solely on the noncustodial parent's income. He argues that the court arbitrarily determined this award since it did not hold a hearing to determine the actual needs of the children and because it neither considered respondent's net annual salary of $10,000 nor determined petitioner's needs for food, shelter and clothing. Respondent maintains that the award is proper and supported by the evidence presented at the custody hearing as to the children's needs and the financial ability of each parent to meet those needs.

■■ ■ The report of proceedings of the custody hearing has not been made a part of the record. Ordinarily, a presumption exists that the omitted report of proceedings justifies the order from which the appeal is taken (*Reace v. Reace* (1976), 39 Ill. App. 3d 496, 350 N.E.2d 143), and any incompleteness will be resolved against an appellant. (*Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 400 N.E.2d 77.) Where, as here, the judgment order recites that the court is fully advised in the premises, a reviewing court must presume that evidence heard was sufficient to support the judgment absent any contrary indication in the record. *Brokerage Resources, Inc. v. Jordan; Needler v. Needler* (1971), 131 Ill. App. 2d 11, 268 N.E.2d 517.

However, the record does contain a report of the proceedings had on September 5, 1978, a date following the custody hearing. In those subsequent proceedings, the court pronounced its rulings awarding support, custody and visitation, denying maintenance and setting a future date to determine attorney's fees. The court's ruling as to child support was limited to the following statement:

"The Court further finds that the child support in this case should be $500 per month. That is just under 36 percent of the husband's spendable income.

The Court is using this low figure because the husband is remarried and has another child to support. Normally, the support award would be 40 percent; however, the Court has taken into consideration the other obligations that the husband has.

The Court cannot consider the income of the husband's new wife in determining child support. The Court has not done so."

Petitioner argues that the word "normally" indicates that the court utilized an arbitrary formula and awarded child support based solely on the noncustodial parent's income. The statement does suggest that the child support award was based on a standard percentage of the husband's spendable income. We find that this statement overcomes any contention that all relevant factors had been considered before making the award.

Section 505 of the IMDMA provides, *inter alia*, that the court may order either or both parents to pay an amount reasonable and necessary for child support "after considering all relevant factors, including: (1) financial resources of the child; (2) the financial resources and needs of the custodial parent; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child and his educational needs; and (5) the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1977, ch. 40, par. 505.

This section does not provide for a normal or standard rate of child support based on a percentage of the noncustodial parent's income. Rather, the amount of child support is to be determined by accommodating the needs of the children with the available means of the parties (*In re Marriage of Gentile* (1979), 69 Ill. App. 3d 297, 387 N.E.2d 979; *Mitchell v. Mitchell* (1977), 54 Ill. App. 3d 18, 369 N.E.2d 276) with both parents sharing an equal duty to support their children. (*Dull v. Dull* (1979), 73 Ill. App. 3d 1015, 392 N.E.2d 421; *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809; *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.) That the court considered petitioner's obligation to support his child of a second marriage does not, of itself, satisfy the explicit requirements of section 505.

While specific findings are not required, it is nevertheless imperative that there be some indication in the record that the trial court considered the factors listed. (See *In re Marriage of Auer* (1980), 86 Ill. App. 3d 84, 407 N.E.2d 1034; *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208.) In the instant case both parents were found to be employed and capable of providing for their own support. Despite respondent's net

annual income of $10,000, the record does not indicate that her ability to produce income for child support was considered. The failure or refusal to consider the respective abilities of each parent to produce income for child support has been held to violate equal protection. (*Chattillion v. Chattillion* (1977), 52 Ill. App. 3d 390, 367 N.E.2d 440.) Further, there is no indication that the court considered either the actual needs of the children or petitioner's needs in making its determination. The failure of the record to indicate that these factors were considered is especially significant when contrasted with the custody determination made in the same ruling. In making the custody determination the court specifically considered all the relevant factors enumerated in section 602 of the IMDMA. Ill. Rev. Stat. 1977, ch. 40, par. 602.

Respondent relies on *Knox v. Knox* (1975), 31 Ill. App. 3d 816, 334 N.E.2d 891, and *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744, that the amount of child support lies within the sound discretion of the trial court and will not be set aside unless contrary to the manifest weight of the evidence. However, *Knox*, while affirming a child support award of $300 per month, noted that the trial court had considered the relative incomes of the parties, the needs of the children, and the estimated monthly needs of the custodial parent. Similarly, in *Raski*, the trial court not only considered the respective incomes of the parties but also considered the needs of the custodial parent and child. Additionally, no question was raised in *Raski* as to the father's ability to make the required payments.

■■■ While the determination of the amount of child support lies within the sound discretion of the trial court (*In re Marriage of Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 697), the amount to be assessed is to be determined by the facts and circumstances in each case and the failure to properly consider such circumstances of either parent is considered an abuse of discretion. (*Matthews v. Matthews* (1976), 42 Ill. App. 3d 1049, 356 N.E.2d 1083.) It is an abuse of discretion to consider only the father's income when determining the issue of child support and to ignore the statutory language specifying that the circumstances of the parties should be considered in determining what arrangements would be reasonable and proper. *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.

Notwithstanding the presumption that sufficient evidence was heard, the record nonetheless indicates that the trial court considered only the petitioner's spendable income in ordering support for the children. This does not satisfy the statutory prerequisite stated in section 505 which authorizes the court to order support "*after* considering all relevant factors, including" those specifically enumerated in section 505. (Ill. Rev. Stat. 1977, ch. 40, par. 505.) Therefore, the order as to child support cannot stand.

## III

Petitioner next maintains that the court improperly appointed an attorney to represent the interests of the four minor children and furthermore that the appointed attorney failed to act reasonably pursuant to the appointment.

### A

Petitioner argues that the appointment of an attorney to represent the interests of the minor children is inappropriate where both parents seek custody, unless the court finds some special reason that separate representation of the children is necessary or desirable.

Section 506 of the IMDMA (Ill. Rev. Stat. 1977, ch. 40, par. 506) provides that the court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation. The historical and practice notes to this section state that such appointments may be made on motion of either party or by the court *sua sponte* and that the use of the word "may" in this section indicates that attorneys are not to be appointed in every case, but only where there has been a showing that the appointment is needed to serve the best interests of the child. Ill. Ann. Stat., ch. 40, par. 506, Historical and Practice Notes, at 631 (Smith-Hurd 1980).

■■ Relying on *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809, which held that the appointment of a *guardian ad litem*, over objection, without an evidentiary showing of its necessity was an abuse of the trial court's discretion, petitioner submits that an attorney to represent the children should not have been appointed without an evidentiary hearing to determine its necessity. The present situation is distinguishable from *Robin* in that neither party objected to this appointment. Since petitioner did not raise this issue in the trial court, he cannot raise it for the first time on appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 395 N.E.2d 119.) However, respondent has not disputed the assertion that the court at the time of the appointment stated that it did not anticipate fees to exceed $400 or, at the most, $1000. It would thus appear that the parties relied on this estimate in not raising an objection to this appointment. The significance of this estimate will be discussed later.

### B

Petitioner also contends that the appointed attorney failed to act reasonably in performing her duties. He argues that she failed to request guidance from the court as to her representation and assumed a pure "advocacy" role in formally retaking depositions of the parties and in her participation in the trial. He maintains that she thereby duplicated the

work of respondent's attorney, caused needless expense and increased the antagonism between the parties.

■■ Since the record does not include a report of the custody hearing nor the depositions taken, we are unable to review the appointed attorney's performance. Accordingly, this contention is resolved against petitioner who is prosecuting the appeal. *Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 400 N.E.2d 77.

## IV

■■ Petitioner next contends that the amount of fees awarded to the appointed attorney and to respondent's attorney are excessive. The attorneys each filed separate petitions listing the services, dates, time expended and the requested hourly rates and fees. Petitioner filed responses and briefs in opposition to each petition and requested a hearing. The appointed attorney then filed a reply and the court continued the matter until the following day in order to review the briefs. On the next day, the court stated:

> "I will ask again. Is there anything further that needs to be presented to the Court, or are you prepared for me to rule at this juncture, based upon the documentation, and I will say I have complete documentation. The Court does not desire or require any testimony; of course, the Court will permit testimony if any of the parties wish to present any."

All the parties, through the attorneys, responded that they had nothing further to present and the question of fees was taken by the court upon the written petitions, objections and briefs for decision without evidence or other proceeding.[1] Whereupon the court found respondent's attorney entitled to a fee of $6000 and the appointed attorney to a fee of $4000.

■■ The allowance of attorney's fees in divorce proceedings rests within the sound discretion of the trial court and the exercise thereof will not be interfered with unless such discretion is clearly abused (*Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42; *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56; *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 394 N.E.2d 779); however, a court of review will not hesitate to reduce the fees awarded if they are unreasonably high. (*Donnelley v. Donnelley; Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387

---

[1] Although petitioner correctly asserts that he was entitled to a hearing on the issue of attorney's fees (Ill. Rev. Stat. 1977, ch. 40, par. 508), he chose instead to submit this issue to the court upon the written petitions, objections and briefs without further hearing. Accordingly, he waived any right to a full and separate hearing and cannot now claim any deprivation under the statute. *In re Marriage of Shedbalkar* (1981), 95 Ill. App. 3d 136, 419 N.E.2d 409; *cf. Renwick v. Renwick* (1977), 52 Ill. App. 3d 701, 367 N.E.2d 1009.

N.E.2d 1254.) The criteria to be considered in determining these awards include: the financial position of the parties; the skill and standing of the attorneys employed; the importance, novelty and difficulty of the questions raised, especially from the family law standpoint; the degree of responsibility involved from a management perspective; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (*Donnelley v. Donnelley*; *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988.) Normally fees granted in a divorce case are based on a separate hourly rate for court time and office time in recognition of the greater expertise required of the former. (*Donnelley v. Donnelley*; *In re Marriage of Dulyn*.) The matter of fixing fees is one of the few areas in which the trial judge may rely on the pleadings, affidavits on file and his own experience. (*Van Fleet v. Van Fleet* (1977), 50 Ill. App. 3d 172, 175, 365 N.E.2d 1143, 1145; *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 39, 347 N.E.2d 512, 516.) The fees allowed should provide for fair compensation, but only for those services which were both reasonable and necessary. (*Donnelley v. Donnelley*.) Nevertheless, a consideration of the financial ability of the person required to make the payment may limit the amount to be awarded, notwithstanding that an extensive expenditure of time and labor may have been required. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.) In any event, more must be shown to justify an award than a compilation of hours and an hourly rate. *In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659; *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 383 N.E.2d 13.

## A

The appointed attorney's itemized petition requested fees and costs as follows: 67.75 hours at $100 per hour for herself, or $6775; 15 hours at $60 per hour, or $900, for two associates; plus $750.20 for costs, totaling $8425.20. The costs included: $72.20 for record copy services, $566 for deposition transcripts, $2 for clerk of the circuit court, $32.50 for lunch with the Brophy children and taxi fare bringing them to court, and $77.50 for the court reporter. Relying on *In re Kersten* (1977), 52 Ill. App. 3d 815, 368 N.E.2d 138, a juvenile court proceeding, petitioner submits that it was improper for the court-appointed attorney to request fees in accordance with her customary rate. While *Kersten* did hold that reasonable compensation for a court-appointed *guardian ad litem* does not necessarily mean full compensation charged by a specific attorney or even the usual or customary rate charged by attorneys generally, it was considered in the context of section 4—5(4) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 704—5(4)) and relied upon the criminal cases therein cited.

Therefore, while instructive, it is not directly controlling as to the statutory provisions applicable here.

■■ In her trial brief[2] the appointed attorney asserted that petitioner presented no evidence that the hourly rate she charged was excessive considering her experience and ability or that she could have done all the work petitioner believes she should have done for $1000. She further states that a great majority of her time was spent in court, thereby justifying a higher hourly rate. The petition recites 21½ hours for trial, which also includes unspecified conferences and trial preparation. Clearly, the time expended in conference and for trial preparation does not justify application of the maximum rate. Hours spent in "conferences," and preparing, taking and reviewing depositions are not customarily considered court time, which would justify a higher rate in recognition of the greater skill required. (See *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988; *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.) A review of the appointed attorney's fee petition does not establish necessity for the extensive services set forth as rendered on behalf of the children. See *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.

■■ The failure of the parties to object to the appointment of the attorney *sua sponte* by the court was in apparent reliance on the fee estimate stated by the court. The aggregate fees and costs requested were more than eight times the estimate. The award is four times the estimated $1000 maximum and over two-thirds of the annual child support ordered for the four children. While we recognize that the amount stated was only an estimate, it still remains an important factor. In addition, the parties have no marital property and relatively modest incomes. Petitioner earns $16,774 net per year prior to the payment of child support and respondent has a net income of only $10,000 per year. Finally, the appointed attorney was involved in the case for only 33 days of its 11-month pendency, during which custody hearings were had on three of those days. Under these circumstances it was unreasonable and unfair to award $4000 in fees and costs to the appointed attorney, and the award must be reconsidered.

---

[2] On October 9, 1979, the appointed attorney's motion for an order acknowledging that she did not represent the minor children on appeal was granted by this court. Accordingly, it should be noted that the appointed attorney did not file a brief in support of her fee petition. However, her reply brief in the trial court adequately presents her position. Additionally, respondent, who has not objected to this petition, has undertaken to brief this issue. Therefore, we address the merits of this issue. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

B

■■ The itemized petition submitted by respondent's attorney requested fees for 112.25 hours at an overall hourly rate of $70. While such time actually may have accrued, in fairness to the parties, we cannot justify charging a greater amount of time than was reasonably necessary for such services. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) The instant petition requests compensation for some 30 hours of legal services variously characterized as "conferences." There is no indication as to the nature or necessity of these services (see *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680), or whether these hours were reasonably required for the proper performance of the legal services involved. (See *Donnelley v. Donnelley*; *Gasperini v. Gasperini*.) Illinois courts have consistently held that the granting of attorney's fees is improper where no evidence is heard as to the items of service performed, or as to the basis of the amount requested or as to the reasonableness of the fees for such services. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947; *Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 334 N.E.2d 779, *appeal denied* (1975), 61 Ill. 2d 598.) The fee petition also sets forth 22 hours spent in preparation, attendance and review of depositions taken during the course of the custody proceedings. This court has recently questioned the propriety of billing a client as court time the time expended taking and attending to depositions. *In re Marriage of Kruse* (1980), 92 Ill. App. 3d 335, 338, 416 N.E.2d 40, 42.

In the instant case, a bifurcated hearing was had. During the first phase, petitioner was granted an uncontested judgment of dissolution of marriage. The issues of custody, visitation and child support were reserved for the second phase of trial. The parties owned no marital property and no question of alimony was raised or considered. As such, the initial phase of these proceedings required little effort on the part of respondent's attorney. There is no indication that the issues posed during the second phase of the bifurcated hearing involved any novel or difficult questions of law, nor does it appear that respondent's attorney assumed any unusual degree of responsibility in the handling of these matters. In determining what constitutes a reasonable award of attorney's fees, the Illinois courts have repeatedly emphasized the complexity of the issues presented. (*E.g., Donnelley v. Donnelley*; *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254; *Schwartz v. Schwartz* (1976), 38 Ill. App. 3d 959, 349 N.E.2d 567.) Although the question of custody, visitation and child support is highly charged in terms of emotion, it is not specifically complex in terms of the legal skills involved and the labor to be employed as would justify an award of $6000. See *In re Marriage of Kruse*.

■■ Furthermore, as this court indicated in *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661, the financial ability of the spouse requested to pay attorney's fees may limit the amount awarded notwithstanding that an extensive expenditure of time and labor may have been required. (See also *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.) Here, the parties' incomes do not permit an award of $6000. The court's order directing petitioner to pay $5000 in fees to respondent's attorney consumes almost one-third of his net or spendable income. From that, he must pay child support, support his present wife and their child, pay his own attorney's fees, and meet his own personal expenses as well as assist in paying the fees awarded the appointed attorney. Respondent earns only $10,000 net per year. In view of the parties' limited resources and the uncomplicated nature of these proceedings, we conclude the order awarding $6000 to respondent's attorney is excessive and that the fee be redetermined upon remand.

## V

Finally, petitioner objects to the court's allocation of the fees awarded against him. He contends that it was an abuse of discretion for the court to require him to pay $3000 of the $4000 in fees awarded the appointed attorney and $5000 of the $6000 in fees awarded respondent's attorney where the parties' relative abilities to pay such fees was never determined.

■■ Section 506 of the IMDMA provides that the court shall enter an order for costs, fees and disbursements in favor of the child's attorney and that such order shall be made against either or both parents, or against the child's separate estate. (Ill. Rev. Stat. 1977, ch. 40, par. 506.) The amount to be assessed either or both parents is necessarily determined by the facts and circumstances of each case. In determining a proper allocation, it is incumbent upon the court to consider the total circumstances of the mother as well as the father. See *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.

■■ Similarly, section 508 of the IMDMA provides that attorney's fees may be awarded to an opposing party after considering the financial resources of the parties. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) However, decisional law has clearly established that attorney's fees are the primary obligation of the party for whom the services are rendered (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 276, 411 N.E.2d 947, 949; *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192), and that before one spouse may recover attorney's fees from the other, the party seeking the relief must prove that he or she is unable to pay the fees and that the opposing party does have such ability. (*Jacobson*; *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 398 N.E.2d 1243.) To

merit recovery, financial inability does not mean destitution; it is sufficient that disbursements of the wife's funds would exhaust her own estate or strip her or her means of support and undermine her economic stability. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579; *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) Nevertheless, where the financial and other circumstances of both parties are substantially similar and the wife's inability and the husband's ability to pay has not been shown, it is an abuse of discretion to award attorney's fees. *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099; *In re Marriage of Stewart* (1979), 79 Ill. App. 3d 1125, 398 N.E.2d 1199; *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 394 N.E.2d 779; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961; *Gold v. Gold* (1974), 17 Ill. App. 3d 11, 308 N.E.2d 75.

Inasmuch as we are remanding the issues as to child support and as to attorney's fees for reconsideration, it is necessary on remand for the trial court to also redetermine the responsibility of the parties for the payment of such fees as may be awarded in light of the parties' total financial resources. Compare *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.

In making this determination, it is necessary that the court consider the parties' expenses as well as their incomes. (*Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77.) In view of the limited resources of both petitioner and respondent, the court should give sufficient consideration to the aftereffect these determinations will have upon the parties. See *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661; *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.

## VI

For the reasons stated, the order as to visitation is affirmed; the orders as to child support, as to fees awarded to the appointed attorney and respondent's attorney, and as to petitioner's responsibility for such fees are reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part, with directions.

SULLIVAN, P. J., and LORENZ, J., concur.