*In re* MARRIAGE OF LAWRENCE BRAND, Petitioner-Counterrespondent-Appellant, and SARAH J. BRAND, Respondent-Counterpetitioner-Appellee.

Fourth District   No. 4—83—0443

Opinion filed May 10, 1984.

MILLS, P.J., concurring in part and dissenting in part.

Bernard A. Puglisi, of Champaign, for appellant.

Kristen H. Fischer, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:
On February 25, 1980, a judgment of dissolution of the marriage of petitioner, Lawrence Brand, and respondent, Sarah J. Brand, was

entered in the circuit court of Champaign County. On January 25, 1982, following a hearing in that court, the court entered an order awarding custody of the parties' minor son to respondent and ordering petitioner to pay a portion of respondent's attorney fees, all guardian *ad litem* fees and child support. No custody award was made in regard to the couple's minor daughter who was married prior to the final custody hearing. The couple was living with respondent at the time of hearing.

On appeal, petitioner maintains the trial court (1) abused its discretion in awarding custody of the son to respondent, (2) erred in ordering petitioner to pay 44% of respondent's attorney fees and all guardian *ad litem* fees, (3) erred in considering petitioner's worker's compensation benefits as a financial resource available for child support payments, (4) abused its discretion in awarding child support, and (5) erred in denying petitioner's second supplemental post-trial motion regarding modification of child support payments. We affirm.

Petitioner testified at the January 1982 hearing that he was 43 years old, had been employed by the State of Illinois and was injured on the job approximately six months prior to that hearing. At that time, he estimated that it might be 18 months before he could return to full-time employment. He was receiving $502.92 biweekly worker's compensation benefits and $152.93 per month as a State disability benefit.

Respondent testified she was 41 years old at the time of the January 1982 hearing, had been a registered nurse, and had been unemployed since 1977 due to a back injury. She stated she was unable to work in any capacity and was receiving public aid, food stamps, and rent subsidy totalling approximately $565 per month.

The court ordered permanent custody of the 14-year-old son to be with his mother despite his expressed preference to live with his father. The court considered each factor listed in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) prior to making its decision. Section 602(a) states the court should consider all relevant factors in determining the best interests of the child including:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and commu-

nity;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." (Ill. Rev. Stat. 1981, ch. 40, par. 602(a).)

Section 602(b) states "[t]he court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child." Ill. Rev. Stat. 1981, ch. 40, par. 602(b).

Petitioner maintains the custody order was not in the child's best interests, and the trial court based its order on improper considerations. Petitioner argues the court should have placed greater weight on the child's preference and should have more carefully evaluated the factors listed in section 602(a) of the IMDMA. He further contends the court was biased against him, and this was reflected in the custody award.

█ We conclude, however, that the trial court did not abuse its discretion in determining custody. Although the son expressed a strong desire to live with his father, that was only one factor to be considered. Disputed testimony was presented that the father had told the boy that the boy need not obey the law, and the father's attitude in court was such that the judge could have concluded the father had a disdain for the law. The trial court was in the best position to determine the weight to be given to these matters. This conduct of the father was such as could affect his relationship with the boy. A social worker testified that there was significance to keeping the boy with his sister even though she had become married. Although respondent was shown to be a former alcoholic, evidence was presented that she had not had any intoxicants to drink for two years. The trial court could have believed this evidence. The respondent appeared to otherwise be a reasonably capable parent. The trial court did not consider improper factors nor abuse its discretion in making the custody award.

█ In ordering petitioner to pay a portion of respondent's attorney fees, the trial court considered that (1) respondent had little ability to pay the fees; (2) petitioner, with his larger income, had better ability to pay them; and (3) petitioner had caused delay by failing or refusing to make agreed appointments with a social worker and not informing the court of his need for a continuance because of a back injury until just before the time of hearing. These were proper considerations. (*Albert v. Albert* (1972), 10 Ill. App. 3d 539, 294 N.E.2d

695.) The court was likewise within its discretion in requiring petitioner to pay guardian *ad litem* fees.

■ The parties stipulated that $4,500 constituted a fair and reasonable fee for services performed by respondent's counsel during this protracted litigation. No evidence was presented as to the exact hours spent by counsel or as to whether the fees were reasonable. Petitioner maintains that such evidence is always required when the amount of such fees is fixed, citing *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308. However, there was no stipulation in *Brophy*. A stipulation which is a true agreement of the parties and properly signed by the attorneys for both parties, in absence of a showing of fraud, is binding on the parties. (*Kazubowski v. Kazubowski* (1968), 93 Ill. App. 2d 126, 134, 235 N.E.2d 664, 668, *cert. denied* (1969), 393 U.S. 1117, 22 L. Ed. 2d 122, 89 S. Ct. 993; *Albert v. Albert* (1972), 10 Ill. App. 3d 539, 542, 294 N.E.2d 695, 698.) Here, there was no showing of fraud, and the parties are bound by their stipulated agreement.

The parties had also stipulated that petitioner would pay the guardian *ad litem* fees. The court fixed this in the sum of $1,722. We do not find that to be unreasonable for work that included four days of hearings.

■ Petitioner's contention that the court improperly considered his worker's compensation benefits in awarding support payments is based upon section 21 of the Workers' Compensation Act, which states:

> "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages ***." (Ill. Rev. Stat. 1983, ch. 48, par. 138.21.)

Petitioner argues that to require him to pay support when some of that support would have to be paid from the proceeds of his worker's compensation benefits makes those benefits liable for a "lien" or "debt" within the meaning of section 21. We disagree.

The court order clearly did not create any charge in the nature of a lien as to his compensation benefits. As to whether the benefits were held liable for a "debt" is a closer question. A substantial argument might be made that the benefits were being made liable for a debt, if the order was to pay past due support. However, we are satisfied the legislature intended that a recipient use compensation benefits for the current expenses of the worker's family, and this is all the court was ordering him to do. The IMDMA was amended effective January 1, 1984, by the addition of section 706.1, which provided a

court entering a support order may include a requirement directing any entity, required to pay worker's compensation benefits to one subject to a support order, to withhold from those benefits a sufficient sum to cover such part of the support order as the court may direct. (Ill. Rev. Stat. 1983, ch. 40, par. 706.1.) The fact that the legislature authorized withholding but made no mention of the situation when one receiving benefits is merely required to make support payments which would inevitably come from the benefits, indicates that the legislature deemed the entry of such an order to be clearly permissible.

The IMDMA is to be "liberally construed" (Ill. Rev. Stat. 1981, ch. 40, par. 102), and we take this to mean that *any resources* available to the parties are to be used to promote the underlying purposes of the Act, which include making "reasonable provision for spouses and minor children during and after litigation." Ill. Rev. Stat. 1981, ch. 40, par. 102(5).

■ Finally, we do not find any abuse of discretion in the award of child support. The evidence supports the trial court's conclusion that, considering all relevant factors, petitioner had the present financial ability to assist in the support of his son. The court expressly stated that any *final* worker's compensation award was too speculative to be considered in determining the petitioner's ability to pay. Petitioner's assertion that the court improperly considered speculative future income of petitioner in making the award is not substantiated.

■ Petitioner's second supplemental post-trial motion included a request to modify the previously pronounced order in regard to child support payments. Petitioner claims error in the trial court's refusal to modify that order but has presented no report of proceedings with reference to the hearing on that issue. Under such circumstances, we assume that the record supported the decision of the trial court. *In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 443 N.E.2d 1.

We note with concern the time that elapsed in this case between the judgment of dissolution of the marriage entered on February 25, 1980, and the entry of the final order on March 9, 1983, disposing of the ancillary matters of custody, property division, support and attorney fees. These matters were heard between January 21 and January 26, 1982. The court pronounced its rulings on the custody issue in open court on January 25, 1982, but took the other issues under advisement. No ruling was ever pronounced on these matters until the filing of the written order on March 9, 1983, which covered all the ancillary matters including the custody issue upon which the court made the earlier in-court pronouncement. The written order eventually entered was very comprehensive and contained 25 pages. The parties

have informed this court that the trial court prepared the order.

We recognize the complexity of the problems presented and the desirability of the trial court to make a comprehensive written order in a case of this nature. We also understand that valid reasons, not appearing in the record, may explain the delay. Furthermore, we are aware of the busy trial schedules of many judges and the time involved in preparing such an order. However, we conclude that, when a court does not have time to prepare such an order, justice is usually better served by having prevailing counsel prepare a written order or the court pronouncing its rulings in open court without designation that a written order is to follow. This would prevent imposing on the parties a delay of over one year between hearing the evidence and the entry of an order disposing of the matter.

For the foregoing reasons, the orders appealed are affirmed.

Affirmed.

TRAPP, J., concurs.

PRESIDING JUSTICE MILLS, concurring in part and dissenting in part:

Upon taking the woolsack in 1617, Lord Chancellor Bacon said: "The subject's pulse beats swift, though the Chancery pace be slow. Fresh justice is the sweetest."

This case is stale!

The minor son here was 14 years old at the time of the hearing, 15 when the order was finally entered, and is 16 years old now!

Besides, what "significance" a social worker sees in keeping this boy with his married sister escapes me. The lad's preference for his father seems to have been afforded short shrift even though the judge considered the home and family environment of both parties to be beneficial and a "close" question. Furthermore, a fair reading of the record reflects a clash of personalities and/or values between the trial judge and the petitioning father.

The basis for the custody order here is murky and overcast. It is to this issue only that I dissent. It should be reversed and remanded for another examination of the merits—and quickly, or the boy will be of age!