*In re* MARRIAGE OF LORETTA KAY VAN NESS, Petitioner-Appellee, and JOHN PEYTON VAN NESS, Respondent-Appellant.

Fourth District   No. 4—85—0073

Opinion filed August 27, 1985.

Norman J. Fombelle and Kent A. Rathbun, both of Burger, Fombelle, Baxter, Zachry & Rathbun, P.C., of Decatur, for appellant.

Fred B. Moore, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The petitioner, Loretta Kay Van Ness, and the respondent, John Peyton Van Ness, were married in December 1972. On July 9, 1984, the trial court entered an order dissolving the marriage and reserving the issues of custody, support, maintenance, and property rights for a later hearing. After a further hearing, the trial court awarded custody of the parties' son to the petitioner and ordered the respondent to pay child support. The court also apportioned the property and denied maintenance. The respondent appeals, contending the trial court erred in dividing the property and ordering him to pay child support.

Prior to the marriage, the petitioner entered into a contract for deed to purchase a house at 702 South Cane Street in Clinton. The petitioner still owed $7,602.03 of the $10,500 purchase price when she married the respondent. She also owned an automobile worth $200 or less and had about $1,000 in the bank. The respondent had about $1,400 in the bank at that time. He also owned a pickup truck and an automobile, valued at $6,000 but on which he still owed $900.

After the marriage, the respondent made monthly payments on the Cane Street residence. He testified he had siding put on the house and added a concrete driveway. He also did landscaping, fencing, and remodeling. By 1978 or 1979, the parties had paid off the contract balance. They sold the Cane Street house for $32,900. After deducting expenses of the sale, they used the proceeds for the purchase of a house at 47 Holiday Drive in Clinton. The purchase price was $49,900, and the parties took out a $7,000 mortgage. At the hearing, the parties stipulated the Holiday Drive residence had a value of $58,000 and was free and clear of any encumbrance.

During the trial, the parties also agreed as to disposition of the personal property, the respondent was awarded his 1984 pickup truck, valued near $10,000; the petitioner was awarded her 1983 automobile, valued at $6,000 or $7,000; the petitioner received personal property, including furniture and household goods, which she valued at $2,000 and he valued at $8,000. The parties stipulated that a savings account

of $2,200 should be held for the benefit of their son.

Each party had an Individual Retirement Account, his in the amount of $4,000 and hers in the amount of $6,000. The petitioner had about $3,000 in a savings account and about $5,600 in her checking account. The respondent had between $14,000 to $15,000 in a savings account, $2,500 of which he claimed was a gift from his uncle. He had an annuity through his employer worth $1,697.63 and pension credits that entitled him to benefits of $287 per month beginning in 19 years.

The respondent worked for a construction company at $13.50 per hour, and he netted $330 a week. Due to the seasonal nature of his work, he was typically laid off four months each year. During this time, he drew unemployment benefits of $209 per week, which would be reduced to $161 per week if he lost his son as a dependent. For the three years prior to trial, the respondent averaged $24,000 in income per year. Petitioner was employed at $7.95 per hour and netted $230 per week. In 1983, her income was $16,000. She estimated her living expenses for herself and her son would be $971.50 per month.

The trial court decided the Cane Street residence had not been transmuted into marital property. The court held the petitioner had a nonmarital interest in that property worth $25,488, which was the $32,900 sale price less $7,512 representing mortgage payments made from marital funds. The court decided to award the Holiday Drive residence to the petitioner. The court stated:

> "The Court believes that the present value of the house would be the $58,000.00. If you subtracted what the Court believes is non-marital property interest of Mrs. Van Ness out of it, it leaves a balance of $33,512.00 or $16,756.00 each in that particular house at this time. The Court is going to award in total the $12,500.00 cash currently in the bank accounts in the name of Mr. Van Ness to him, and that is towards his interest in the property in question here."

In balancing the property between the parties, the court also ordered the petitioner to pay the respondent $3,000. The court allowed each party to keep his or her IRA. The court stated the petitioner had been awarded a larger share of the current property because of the difference in income and to insure that she had sufficient means of support for herself and her son. The court awarded the respondent the entire interest in the pension and annuity. The court also ordered the respondent to pay $70 per week in child support.

The main issue on appeal concerns the trial court's disposition of property. In deciding that the Cane Street residence had not been

transmuted, the trial court relied on *In re Marriage of Olson* (1983), 96 Ill. 2d 432, 451 N.E.2d 825. *Olson* applied and clarified the decision in *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239. The recent amendment of section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Ann. Stat., ch. 40, par. 503(c), at 52 (Smith-Hurd Supp. 1985)) was a legislative rejection of the rationale employed in *Smith. In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.

"[The amendment] alters the concept of transmutation as set forth in *Smith* and *Olson*. Subsection (c)(1) provides that when marital and non-marital property are commingled and the contributed property thereby loses its identity, its classification as marital or non-marital property is transmuted to the estate receiving the contribution. If marital and non-marital property are commingled into newly acquired property and the contributed properties thereby lose their identity, the commingled property is deemed transmuted into marital property." Ill. Ann. Stat., ch. 40, par. 503(c), Supplement to Historical & Practice Notes, at 60 (Smith-Hurd Supp. 1985).

■ The Holiday Drive residence was clearly marital property. Under section 503(b), property acquired after the marriage is presumed to be marital property. This presumption may be overcome by a showing that the property was acquired by a method listed in section 503(a). None of the methods described in that section applies to this case. While the Holiday Drive residence was acquired in part with proceeds from the sale of the Cane Street residence, which the petitioner contends was nonmarital property, marital funds were also used. Thus, there was a commingling of funds. Under section 503(c)(1), this commingled property is deemed marital property.

■ The next issue is whether the petitioner is entitled to any reimbursement for any nonmarital contribution to the purchase of the Holiday Drive residence. Under section 503(c)(2), the spouse seeking reimbursement has the burden of retracing a contribution by clear and convincing evidence. Even if the contribution can be clearly traced, however, contributions deemed gifts are not reimbursed. Because the Holiday Drive property was taken in joint tenancy, a presumption of a gift to the marital estate arises. (*In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498.) Under section 503(b) and *Nagel*, the petitioner's contribution toward the purchase of the Holiday Drive residence is presumed to be a gift. (See also J. Feldman & C. Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division upon Dissolution of Marriage*, 72 Ill. B.J.

336, 340 (1984).) As the petitioner presented no evidence rebutting this presumption, she is not entitled to any reimbursement.

The petitioner maintains the trial court did not award her reimbursement, but merely considered her contribution of her nonmarital interest in the Cane Street residence when dividing the marital property under section 503(d). After property has been properly characterized, the marital property is apportioned taking into account each spouse's contribution. (*In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030.) The petitioner contends, and the trial court agreed, that her contribution was the sale price of the Cane Street residence less mortgage payments made on that house from marital funds.

■ The trial court could properly have considered the petitioner's contribution toward the purchase of marital property, but we find that the court incorrectly valued the amount of that contribution. The petitioner argues the Cane Street residence would have been deemed nonmarital property under ·section 503(c). She maintains the burden would be on the respondent to demonstrate the value of marital contributions to the Cane Street residence. Because he failed to show the house enhanced in value after the marriage, she contends the trial court properly apportioned the value of the house. We agree that the analysis of section 503(c) can be used to determine the value of contributions for purposes of section 503(d). In this case, however, we are dealing with the disposition of the Holiday Drive residence, not the Cane Street residence. Under section 503(c), the burden rests on the spouse claiming contribution to the acquisition of marital property to trace that contribution. We feel the burden should also be on the petitioner under section 503(d).

Neither party presented evidence as to the value of the Cane Street residence at the time of the marriage. Both parties claimed to have made improvements which enhanced the value, but neither presented testimony as to the value of any enhancement. The only basis from which the trial court could value the parties' respective contributions was their contributions toward the purchase of equity in the house. The evidence submitted demonstrated the petitioner paid about 28% of the purchase price. Her contribution toward the purchase of the Holiday Drive property, therefore, could be valued, at most, at 28% of the sale price of the Cane Street house. See 72 Ill. B.J. 336, 342 (1984).

■ The respondent also contends the trial court erred in ordering him to pay $70 per week as child support. He maintains the trial court abused its discretion by basing its decision on a set percentage of his income rather than considering the factors under section 505(a)

of the Act. (See *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) The trial court expressly stated that it had considered all of the factors presented during the course of the proceedings. The respondent contends the trial court ignored his periods of unemployment when determining the proper amount of child support. Subsequent to the hearing, the trial court reduced the amount of child support to $42 per week during the respondent's current unemployment, indicating he will be protected while unemployed. The respondent alleges the petitioner currently has the means to support both herself and the child, but this does not relieve the respondent of his responsibility for support. The evidence of his previous earnings demonstrates his ability to pay support. A court may properly consider past earnings where current income is uncertain. (*In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 436 N.E.2d 561.) We find no abuse of discretion in the award of child support. The evidence supports the trial court's conclusion that, considering all relevant factors, the respondent has the present ability to assist in the support of his son. *In re Marriage of Brand* (1984), 123 Ill. App. 3d 1047, 463 N.E.2d 1037.

We therefore reverse the trial court's distribution of the marital property. Because the parties previously agreed to the division of personal property and vehicles, we see no reason why that division should be upset on remand. The trial court, however, should reconsider the disposition of the marital home and bank accounts in light of this opinion. Furthermore, because the necessity and amount of child support depend to some extent on the apportionment of property, we find it necessary to reverse the trial court's decision on this issue also. On remand, the court shall consider whether any change in the division of property warrants a change in the amount of child support. *In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 412 N.E.2d 698.

Reversed and remanded with directions.

GREEN, P.J., and MORTHLAND, J., concur.